UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALIL SHABAZZ,

        **Plaintiff,**                  **CIVIL ACTION NO. 00-CV-73005-DT**

vs.

                                      **DISTRICT JUDGE DENISE PAGE HOOD**

BILL MARTIN, et al.,            **MAGISTRATE JUDGE MONA K. MAJZOUB**

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendants' Motion for Summary Judgment (Docket # 219) should be **DENIED** and Defendants' Motion for Summary Judgment (Docket # 205) should be **GRANTED IN PART AND DENIED IN PART**.

\*\*\*

Plaintiffs Khalil Shabazz and Raphael-X filed a First Amended Complaint on September 7, 2001 pursuant to 42 U.S.C. § 1983 alleging various violations of their constitutional rights. Plaintiffs' First Amended Complaint names former Michigan Department of Corrections (MDOC) Director Bill Martin in both his official and individual capacity, MDOC Special Activity Coordinator Dave Burnett in his individual capacity, and MDOC Transfer Classification Analyst Charles Zamiara in his individual capacity. On July 16, 2002, Magistrate Judge Thomas A. Carlson issued a Report and Recommendation in which he recommended that Plaintiffs' complaint be dismissed in its entirety. On March 24, 2003, the Honorable Denise Page Hood issued a Memorandum Opinion and Order accepting in part and rejecting in part Magistrate Judge Carlson's Report and Recommendation. By granting partial summary judgment, Judge Hood allowed Plaintiffs to proceed with their First Amendment claim based on a right to possess prayer rugs and star and crescent pendants and their Fourteenth Amendment equal

protection claim based on Plaintiff Shabazz's security classification. In an Order dated March 15, 2004, Plaintiff Raphael-X was dismissed from this action leaving Shabazz as the sole remaining Plaintiff.

Discovery is now closed and on March 23, 2005 Defendants filed a Motion to Dismiss and for Summary Judgment to which Plaintiff filed a timely response and Defendants filed a reply. On April 27, 2005, the Sixth Circuit decided *Jones-Bey v. Johnson*, 407 F.3d 801, and adopted a 'total exhaustion rule' under the Prison Litigation Reform Act. In response to *Jones-Bey*, Defendants filed another Motion for Summary Judgment asserting that the 'total exhaustion rule' should apply here such that Plaintiff's case should be dismissed. Plaintiff filed a Response and Defendants filed a Reply. The case has been referred to the undersigned for all pretrial proceedings.

In his First Amended Complaint, Plaintiff alleges that he is a devout muslim and minister of the Nation of Islam (Plaintiff's First Amended Complaint, pg. 8, ¶ 29). On or about July 27, 1997 Plaintiff was transferred from the Marquette Branch Prison to Standish Maximum Correctional Facility (SMF). *Id.* ¶ 30. SMF has a higher security classification than Marquette. Allegedly, Plaintiff requested to be transferred to a correctional facility with a lower level security classification. *Id.* ¶ 32. "In January 1998, Plaintiff was told by case manager Krajnik that [Defendant] Zamaira did not want to transfer Plaintiff . . . to a lower level (despite the fact that all other prisoners similarly situated would be eligible for placement in a lower level facility)." *Id.* ¶ 33. Thereafter, Plaintiff allegedly wrote several letters to Defendant Zamaira requesting a transfer "to his proper security level based on the MDOC security classification screening . . . but was denied placement by Defendant Zamaira because Plaintiff is known throughout MDOC as a Muslim leader." (Plaintiff's First Amended Complaint, pg. 8-9, ¶ 35).

In June 1998, MDOC instituted policy directive (PD) 05.03.150 which outlines the religious items that inmates from each religious group were allowed to possess while incarcerated. Plaintiff alleges that Defendant Burnett was responsible for drafting and implementing PD 05.03.150. Plaintiff

alleges that PD 05.03.150 violated his First Amendment right to the free exercise of his religion in that the policy prohibited members of the Nation of Islam to possess religious pendents, prayer rugs and prayer oil all of which Plaintiff alleges are necessary in the practice of his religion (Plaintiff's First Amended Complaint, pg. 10). On November 3, 1998 Plaintiff was issued a misconduct ticket for wearing a religious pendent in violation of PD 05.03.150. Plaintiff was later found guilty of the charged misconduct and "was forced to send his religious pendent out of the prison" *Id.* at 11, ¶ 45. Plaintiff further alleges that Defendant Martin, as the Director of MDOC, "approved and enforced this disparate religious policy along with Defendant Burnett, and has been cognizant of the discriminatory affects [sic] that it has on prohibiting the free and equal practice of religious beliefs by members of the Nation of Islam." *Id.* ¶ 47. On May 24, 2004, MDOC revised PD 05.03.150 and allowed Nation of Islam members to possess the items previously prohibited under PD 05.03.150. Plaintiff claims that Defendants Martin, Burnett and Zamaira have violated his First and Fourteenth Amendment rights under the United States Constitution. Defendants filed a Motion to Dismiss and for Summary Judgment which is now before the Court.

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

**DISCUSSION AND ANALYSIS**

    *1. Exhaustion of Remedies*

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides that "no action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has declined to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The Sixth Circuit has held that "prisoners filing a § 1983 case involving prison conditions must allege and show that they have exhausted all available state administrative remedies" before a district court may adjudicate their civil rights claims, and has also held that the district court should enforce this requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998), *cert. denied*, 525 U.S. 833 (1998). Compliance with this provision requires that prisoners file a grievance against the person(s) they ultimately seek to sue, *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001), and merely grieving prison conditions, without identifying any particular person who may be responsible, is insufficient. *Gibbs v. Bolden*, 151 F. Supp.2d 854, 857 (E.D. Mich. 2001).

In this case, Judge Hood dismissed without prejudice eight of the ten claims contained in Plaintiffs' original complaint for failure to exhaust administrative remedies. Judge Hood also directed Plaintiffs to file an Amended Complaint containing the two exhausted claims which Amended Complaint was filed on September 7, 2001. On April 27, 2005, the Sixth Circuit decided *Jones-Bey v. Johnson*, 407 F.3d 801 and adopted a 'total exhaustion rule' under the PLRA. Under this 'total exhaustion rule' a prisoner complaint brought under § 1983 must be dismissed in its entirety where an

inmates brings both exhausted and unexhausted claims. Defendants assert that *Jones-Bey* should be applied retroactively such that Plaintiff's remaining claims must be dismissed. This Court disagrees.

Whether to apply a new rule of law retroactively is governed by the United States Supreme Court's decision in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971). "*Chevron Oil* states that nonretroactivity may be appropriate in a limited number of circumstances in which it would be inequitable to apply new law to prior conduct taken in reliance on old law." *Lowary v. Lexington Local Brd of Edu.*, 903 F.2d 422 (6th Cir. 1990). When deciding whether a new law should be applied retroactively, a court must consider: (1) whether the decision to be applied establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retrospective application promotes or hinders the purpose and effect of the rule in question; and (3) whether application of the new rule would produce 'substantial inequitable results if applied retroactively'. *Chevron*, 404 U.S. at 106-07.

The first and most important part of the *Chevron Oil* test requires a clear break in the law. "This 'clear break' requirement is a threshold consideration for determining the nonretroactive application of federal decisions." *Lowary*, 903 F.2d at 427. The first factor of the *Chevron* test weighs against applying *Jones-Bey* retroactively. Prior to *Jones-Bey*, the courts in this circuit were split on the issue of a 'total exhaustion rule' under the PLRA and the Sixth Circuit had not affirmatively decided the issue. *See Jones-Bey*, 407 F.3d at 806 ("Our cases addressing PLRA exhaustion are somewhat inconsistent. At least one of this court's prior decisions suggests that total exhaustion is not required under the PLRA"). Thus, the Sixth Circuit's decision in *Jones-Bey* mandating a 'total exhaustion rule' represents a clear break in the law of this circuit. Given that *Jones-Bey* represents a clear break in the law, there is a strong presumption against its retroactive application.

Furthermore, applying the *Jones-Bey* decision retroactively here does nothing to promote the

underlying purpose of the 'total exhaustion rule' which is to screen out frivolous complaints. *See Jones-Bey*, 407 F.3d 801 (finding that the total exhaustion rule "'would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss.'")(internal citations omitted). Applying a 'total exhaustion rule' meant only to screen out unexhausted claims serves no purpose here where the Court has already dismissed Plaintiff's unexhausted claims and allowed his exhausted claims to proceed through discovery and to the final pre-trial stages of the proceeding. Finally, retroactive application of *Jones-Bey* would result in a substantial inequity to Plaintiff who would now be time-barred from re-filing and pursuing his claims.

Furthermore, even assuming, *arguendo*, that *Jones-Bey* applied retroactively, dismissal of Plaintiff's complaint would be unwarranted because Plaintiff's Amended Complaint contains only exhausted claims. Therefore, even if Plaintiffs' original complaint contained both exhausted and unexhausted claims, Plaintiff's Amended Complaint supercedes any previously filed and deficient complaint that *may* have been subject to dismissal under *Jones-Bey*. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)(when plaintiff files amended complaint, new complaint supersedes all previous complaints and controls case from that point forward)(citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

For all of the above reasons, the Court concludes that *Jones-Bey* should not be applied retroactively to the instant case. Assuming, *arguendo,* that *Jones-Bey* does apply retroactively, Plaintiff's Amended Complaint contains *only* exhausted claims such that dismissal under *Jones-Bey* would be unwarranted. Accordingly, Defendants' Motion for Summary Judgment, filed on May 20, 2005, should be **DENIED**.

### 2. Defendant Martin

Plaintiff names former MDOC Director Bill Martin in both his official and individual capacity.

Specifically, Plaintiff alleges that:

> Defendant Martin is the Director of the MDOC and has approved and enforced this disparate religious policy along with Defendant Burnett, and has been cognizant of the discriminatory affects that it has on prohibiting the free and equal practice of religious beliefs by members of the nation of islam.
>
> Despite Plaintiff['s] efforts to grieve and notify director Martin's office of the disparate religious policy, this Defendant (Martin) has made no attempt to rectify or correct this unfair policy and has denied Plaintiff['s] complaints at every step.
>
> Defendant Martin is responsible for the implementation of policy directives governing the MDOC and continues to propagate this unfair religious policy that injures Plaintiff . . . and all other members of the Nation of Islam under the custody of the MDOC.

(Plaintiff's Complaint, pg. 11, ¶¶ 47-49). In his Motion to Dismiss and For Summary Judgment, Defendant Martin contends that Plaintiff has failed to provide a factual basis to support his claim against Martin in his individual capacity. This Court agrees.

In order to state a claim for monetary damages under § 1983, the plaintiff must allege some specific, personal wrongdoing on the part of the individual defendant, and theories of vicarious liability or respondeat superior are not sufficient. *Rizzo v. Goode*, 423 U.S. 362, 376 (1976). Here, Plaintiff fails to allege any personal involvement on the part of Defendant Martin but rather seeks to impose liability based on Martin's former position as the Director of MDOC who was "responsible for the implementation of policy directives" (Plaintiff's Complaint, pg. 11, ¶ 49). While Plaintiff's allegations *may* support his claims against Martin in his official capacity, Plaintiff has failed to allege any personal involvement sufficient to name Defendant Martin in an individual capacity. Accordingly, Defendant Martin's Motion to Dismiss should be GRANTED under Fed. R. Civ. P. 12(b)(6) as to Plaintiff's claims against Martin in his individual capacity.

Now, the Court considers Plaintiff's claims against Martin in his official capacity. Essentially,

Plaintiff alleges that Defendant Martin was the 'public official' responsible for implementing MDOC's PD 05.03.150 which policy Plaintiff alleges violates his First and Fourteenth Amendment rights. To the extent that Plaintiff seeks declaratory and prospective injunctive relief to remedy these claims, the Eleventh Amendment does not preclude Plaintiff's claims against Martin in his official capacity. *Ex Parte Young*, 209 U.S. 123 (1908); *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). Martin alleges, however, that he is not the properly named official in this proceeding because he is no longer the Director of MDOC. Notwithstanding his retirement, Defendant Martin contends that Plaintiff's claims, if any, arising from PD 05.03.150 are now moot in light of MDOC's policy revisions. The Court considers both of these arguments in turn.

First, the Court must determine whether Martin is the properly named party to defend against Plaintiff's claims that PD 05.03.150 is unconstitutional. Fed. R. Civ. P. 25(d)(1) provides:

> When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Defendant Martin was the Director of MDOC from January 1999 until March 2, 2002 after which Patricia Caruso succeeded Martin and remains the current Director of MDOC. Therefore, Caruso should be substituted in place of Martin as the "public officer" responsible for promulgation and implementation of MDOC policies. Accordingly, the Court recommends that Caruso, in her official capacity, be substituted for Martin for purposes of defending MDOC PD 05.03.150.

Notwithstanding the substitution of Caruso, Defendants maintain the Plaintiff's claims, if any, arising under PD 05.03.150 are now moot in light of recent MDOC policy revisions. Under MDOC's current policy, PD 05.03.150, Nation of Islam members are now permitted to possess the religious items

-9-

previously in dispute. Therefore, Defendants argue that there is no case or controversy such that Plaintiff's First Amendment free exercise claim should be dismissed. The doctrine of mootness allows federal courts to dismiss cases or claims where there is no longer a live controversy. In *Roe v. Wade*, 410 U.S. 113, 125 (1973), the Supreme Court noted, "in order to avoid mootness 'the usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated.'" In certain circumstances, however, a court may adjudicate the merits of a claim that is moot where the issue is "capable of repetition, yet evading review." *Roe*, 410 U.S. at 125; *Dunn v. Blumstein*, 405 U.S. 330 (1972); *Moore v. Ogilvie*, 394 U.S. 814 (1969)(a case is not moot when it creates a continuing controversy). Here, MDOC's voluntary revision of its policy provides no assurance that it will not revert back to its previous policy. This possibility, coupled with the fact that MDOC may have revised its policy in response or anticipation of litigation, leads this Court to conclude that Plaintiff's First Amendment claim, while moot under current MDOC policy, is capable of repetition yet evading review. *See Eng. v. Smith*, 849 F.2d 80, 83 (2d Cir. 1986); *Fisher v. Koehler*, 692 F. Supp. 1519, 1565-66 (S.D. N.Y. 1988); *Kangas v. Gluth*, 951 F.2d 1504 (9th Cir. 1991). Accordingly, the Court recommends the denial of Defendants' Motion to Dismiss Plaintiff's First and Fourteenth Amendment claims as moot.[1]

### 3. Defendant Dave Burnett

In the Amended Complaint, Plaintiff alleges that Defendant Burnett was responsible for drafting and implementing PD 05.03.150 and seeks to impose liability upon Burnett in his individual capacity. For the following reasons, the Court concludes that Plaintiff has failed to state a claim against Burnett in his individual capacity. Plaintiff acknowledges that Burnett served in an advisory capacity and

---

[1] Defendants' have not moved for summary judgment as to the merits of Plaintiff's First Amendment claims.

"provided most of the information for [MDOC's] Religious Policy . . ." (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss and for Summary Judgment, pg. 16). These allegations, however artfully plead, do not demonstrate any acts violative of Plaintiff's constitutional rights. Burnett's role in providing recommendations or drafting a policy did nothing to violate Plaintiff's constitutional rights. To hold otherwise would allow inmates to name every individual who may have carried the paper and provided the pens that were ultimately used in implementing an unconstitutional policy. To the extent that Plaintiff claims that PD 05.03.150, as implemented, violates his rights, the proper party to defend this claim is the 'public official' responsible for implementing the policy. As already pointed out, MDOC Director Caruso, as the successor to former MDOC Director Martin, is the properly named Defendant responsible for implementing PD 05.03.150. Therefore, without any specific, personal wrongdoing on the part of Burnett, Plaintiff's claims against Burnett in his individual capacity must fail.

Accordingly, the Court recommends that Defendant Burnett's Motion for Summary Judgment be **GRANTED.**

### 4. Defendant Zamaira

In his Complaint, Plaintiff alleges that Defendant Zamaira violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiff claims that although he qualified for Level II security placement, Defendant Zamaira placed him in a Level V facility. Plaintiff alleges that Defendant Zamaira's actions were based on Plaintiff's membership in the Nation of Islam. Defendant Zamaira asserts, however, that he lacked the authority to determine Plaintiff's security placement and that he merely followed MDOC guidelines. Zamaira moves for summary judgment asserting that he was not personally involved in any acts violative of Plaintiff's constitutional rights and that Plaintiff has failed to support his Equal Protection claim. For the following reasons, the Court

concludes that Zamaira's Motion for Summary Judgment should be denied.

Personal involvement is a question of fact such that summary judgment is appropriate only if there are no genuine issues of material fact. *Williams v. Smith*, 781 F.2d 319 (6th Cir. 1986). Here, Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to Zamaira's level of involvement. On June 4, 1997, Defendant Zamaira approved Plaintiff's departure to a Level V facility even though Plaintiff's classification was designated as a Level II (Plaintiff's Exhibit 22, ¶ 10 of Zamaira Affidavit). More recently, Defendant Zamaira approved a request to depart Plaintiff from a Level II classification to a Level V facility (Plaintiff's Exhibit 24, Classification Screen Review). During his deposition, Zamaira testified as follows:

> Q – So, up until 1998 staff at local prisons could do a one security level departure from a prisoner's confinement or management levels?
>
> A – Yes
>
> Q – And you would not have to be involved in that?
>
> A – No
>
> Q – All right. Now, if, as indicated on Deposition Exhibit 13 – you indicated you signed this particular document on August 17, 2001?
>
> A – That is correct.
>
> Q – Indicating that [Plaintiff] would be departed to a security level V?
>
> A – Yes
>
> Q – And, if [Plaintiff] was on the CFA hold list, would Deputy Director Bolden's approval for [continued] . . . departure have to be obtained?
>
> A – No
>
> Q – And, so, if [Plaintiff] had been departed to a security level V for many years, when you saw this screen – review in 2001 in Deposition Exhibit 13, you would not need to obtain Deputy Director Bolden's approval?

> A – Occasionally, and it wasn't on a formal basis, we would approach him with some individuals and based on his response to that we would know how to deal with it at a future period of time.
>
> Q – All right. With regards to [Plaintiff] did you obtain Deputy Director Bolden's approval for departing [Plaintiff] to a higher security level in 2001?
>
> A – I don't believe so, no.

(Plaintiff's Exhibit 15, Deposition of Zamaira, pg. 51-53). This testimony conflicts with Defendant Zamaira's assertions that he had no role in Plaintiff's upward departure into a Level V facility.

Next, Defendant Zamaira asserts that Plaintiff has failed to present any evidence to support his Equal Protection Claim. This Court disagrees. In order to prove an Equal Protection violation based on allegations that Defendants selectively enforced a higher security classification, Plaintiff must demonstrate that: (1) defendant singled out a person belonging to an identifiable group, such as a particular religion; (2) that the defendant initiated the classification with a discriminatory purpose; and (3) the classification must have a discriminatory effect on the group to which plaintiff belongs. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). As this Court held in its Order dated March 24, 2003:

> Plaintiff Shabazz has created a question of fact as to the second factor based on his affidavit, incorporating statements in the Complaint as true. Plaintiff Shabazz avers that Case Manager Krajnik informed him that Defendant Zamaira denied his transfer to a lower security prison because he was a Nation of Islam leader.

(Judge Hood's Order dated March 24, 2003, pg. 6). As to the first factor, Plaintiff must show that "similarly situated persons outside [his religion] were not [subject to a higher security classification]." *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)(citing *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)). Plaintiff has demonstrate such disparate treatment in his Exhibits 9-13 containing various documents from other inmates' MDOC files.

As to the third fact, Plaintiff has created a genuine issue of material fact as to whether Defendants' security classification practices have a discriminatory effect on the Nation of Islam members. Specifically, Plaintiff points out that there are about 2,200 registered members of the Nation of Islam currently incarcerated (Plaintiff's Brief in Opposition to Defendants' motion, pg. 6 & Plaintiff's Exhibit 14). Of those 2,200 Nation of Islam inmates, 35% are held at Level IV or V facilities (Exhibit 14). Of the 35% held at Level IV or V facilities, 24% have earned a Level I or II security classification (Exhibit 14). In comparison, there are about 47,000 male prisoners housed by MDOC of which only about 4% are held at a Level IV or V facility. These numbers are strong evidence that MDOC's classification procedures may discriminate against Nation of Islam members. In this respect, Plaintiff has demonstrated a genuine issue of material fact as to his Equal Protection claim.

Having reviewed the exhibits of the parties, the Court is convinced that there are genuine issues of material fact as to whether Defendant Zamaira violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the Court recommends that Defendant Zamaira's Motion for Summary Judgment be **DENIED.**

## **CONCLUSION**

Based on the foregoing, the Court recommends that Patricia Caruso be substituted for Bill Martin as the party defendant responsible for the implementation of PD 05.03.150. Although Plaintiff's claims may appear moot, Defendant Caruso's Motion for Summary Judgment based on the same should be **DENIED** where the alleged unconstitutional acts are capable of repetition yet evading review. Defendant Burnett's Motion for Summary Judgment should be **GRANTED** as Plaintiff has failed to allege any personal acts of wrongdoing violative of his constitutional rights. Finally, Defendant Zamaira's Motion for Summary Judgment should be **DENIED** where there are genuine issues of

material fact as to whether Zamaira was personally involved in acts violative of Plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment. With discovery now complete and having passed the deadline for dispositive motions, the instant matter should proceed to a final pretrial conference as scheduled by the Honorable Denise Page Hood.

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.

Dated: October 11, 2005              s/ Mona K Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 11, 2005              s/ Lisa C. Bartlett
                                     Courtroom Deputy