UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KHALIL SHABAZZ,**

    Plaintiff,                                    Case No. 00-CV-73005-DT

v.                                               HONORABLE DENISE PAGE HOOD

**BILL MARTIN, et al.,**

    Defendants.

_____/

## ORDER ACCEPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

**I. INTRODUCTION**

    This matter is before the Court on Magistrate Judge Mona K. Majzoub's Report and Recommendation dated October 11, 2005. Both parties filed Objections to the Magistrate Judge's Report and Recommendation.[1]

    The Magistrate Judge recommended that Defendants' March 23, 2005 Motion for Summary Judgment be granted in part and denied in part, and Defendants' May 20, 2005 Motion for Summary Judgment be denied. Additionally, the Magistrate Judge recommended that Patricia Caruso, in her official capacity, be substituted for Defendant Bill Martin pursuant to Fed. R. Civ. P. 25(d)(1).

---

[1] The parties were required to file objections to the Magistrate Judge's Report and Recommendation within 10 days of service pursuant to 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). However, Plaintiff filed his Objection to the Report and Recommendation on October 28, 2005. On the same day, Defendants filed a Motion for Extension of Time to File Objections to the Report and Recommendation. On November 14, 2005, before the Magistrate Judge issued an order on Defendants' Motion, Defendants filed their Objections.

## II.  STANDARD OF REVIEW

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. §636.  This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1)(C).  This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

Pursuant to Fed. R. Civ. P. 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute must be evident from the evidence in order to deny such a motion.  Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan* v. *United States of Am.*, 342 F. 3d 493, 497 (6th Cir. 2003).

## III.  LAW & ANALYSIS

The Court agrees with the Magistrate Judge that Defendants' May 20, 2005 Motion for Summary Judgment based upon failure to exhaust administrative remedies should be denied. Defendants assert that the Sixth Circuit's recent decision in *Jones-Bey v. Johnson,* 407 F. 3d 801 (6th Cir. 2005)*,* adopting a 'total exhaustion rule' should be applied retroactively to this case because Plaintiff's original complaint contained two exhausted and eight unexhausted claims.  This Court dismissed without prejudice the eight unexhausted claims contained in Plaintiff's original

2

complaint and directed the Plaintiff to amend his complaint. On September 7, 2001, Plaintiff filed an amended complaint with the remaining exhausted claims.

Defendant objects to the Magistrate Judge's conclusion that the *Jones-Bey* decision was a 'clear break' in the law rendering its retroactive application inappropriate. *Lowary v. Lexington Local Brd. of Edu.*, 903 F. 2d 422, 427 (6th Cir. 1990). The Court must evaluate the following three factors to determine whether the *Jones-Bey* decision should be applied retroactively: 1)whether *Jones-Bey* establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed; 2) whether retrospective application promotes or hinders the purpose and effect of the rule in question and 3) whether application of the new rule would produce 'substantial inequitable results' if applied retroactively'. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971).

Defendants argue that *Jones-Bey* "[i]s the controlling interpretation of federal law and must be given full retroactive effect to all cases still open on direct review . . ." *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993), *See In re Federated Dep't Stores, Inc. 44 F. 3d 1310, 1318* (6th Cir. 1995). Defendant asserts that the total exhaustion requirement was in effect and embodied in 42 U.S.C. §1997(e) when the Prison Litigation Reform Act became effective in 1996. However, the statute is silent on whether total exhaustion is required,[2] and the ambiguity in the exhaustion provision has led to a split among the circuits

---

[2] 42 U.S.C. §1997(e) states "[n]o action shall be brought with respect to prison conditions other than under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

regarding this very issue.[3] Defendant ignores the fact that the *Jones-Bey* Court admitted that "[o]ur cases addressing PLRA exhaustion are somewhat inconsistent. At least one of this court's prior decisions suggests that total exhaustion is not required under the PLRA." *Jones-Bey*, 407 F. 3d at 805. Additionally, the *Jones-Bey* Court noted that "the district courts in this circuit are split on whether the PLRA requires total exhaustion." *Id.* at 806. The fact that this Court adopted a total exhaustion rule in *Williams v. Overton*, Case No. 02-75133, and the Sixth Circuit affirmed does not change the fact that the issue of total exhaustion was unsettled in this circuit. The Sixth Circuit relied on *Jones-Bey* to affirm the dismissal of the case based upon the plaintiff's failure to totally exhaust his administrative remedies. *Williams v. Overton*, 136 Fed. Appx. 859, 862; 2005 U.S. App. LEXIS 12277 (June, 22 2005). Furthermore, the *Williams* Court explicitly stated that the issue of total exhaustion was unclear until *Jones-Bey* was decided, stating that "[u]ntil fairly recently, there had been a lack of clear consensus on whether the language of 42 U.S.C. §1997e (a) compels total exhaustion. Recently, however, this court definitively answered the question . . . it is now clear that total exhaustion is required . ." *Id.* at.862. (Internal quotations omitted).

This case was filed one year after the Sixth Circuit decided *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), which implicitly held that district courts have the discretion to dismiss unexhausted claims and proceed to the merits of the exhausted claims when presented with a "mixed complaint" containing both exhausted and unexhausted claims. *See Thomas v. Woolum,* 337 F. 3d 720, 734 (6th Cir. 2003) (relying on *Hartfield* in rejecting total exhaustion requirement)). *See also Burton v. Jones*, 321 F. 3d 569, 575 (6th Cir. 2003) ("[A] prisoner's lawsuit , which alleges multiple

---

[3] The Tenth Circuit requires total exhaustion. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004), while the Second Circuit does not require total exhaustion. *See Ortiz v. McBride*, 380 F.3d 649, 656-63 (2nd Cir. 2004), *cert. denied*, 125 S.Ct. 1398 (2005).

claims against multiple defendants is not vulnerable to dismissal under §1997e(a) simply because the prisoner failed to exhaust a particular claim as to a specific defendant.")). While Defendants accurately state that "[t]here was no clear Sixth Circuit decision prior to *Jones-Bey* that said total exhaustion [is] not required," it is also equally true that there was no clear Sixth Circuit decision indicating that total exhaustion was required.  The requirement of total exhaustion was "an issue of first impression whose resolution was not clearly foreshadowed," and it would be inequitable and unjust to apply *Jones-Bey* under these circumstances.  *Chevron Oil*, 404 U.S. at 106. Plaintiff legitimately relied on prior authority which impliedly held that total exhaustion was not required in our circuit.

Furthermore, Defendants' reliance on *Baxter v. Rose*, 305 F. 3d 486 (6th Cir. 2002) to support the argument that this Court improperly allowed Plaintiff to amend his complaint ignores the fact that Plaintiff was ordered to amend his complaint in 2001, well before the Sixth Circuit held "that a plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, also [can] not be allowed to amend his complaint to cure the defect." *Baxter*, 305 F. 3d at 487.

Lastly, retroactive application of *Jones-Bey* would not promote the purpose and effect of the total exhaustion requirement, which is to reduce the number of frivolous prisoner civil rights suits. *Jones-Bey,* 407 F. 3d at 807. The purpose behind the exhaustion requirement "is to reduce the quantity and improve the quality of prisoner suits."*Porter* v. *Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Plaintiff amended his complaint to include only exhausted claims. Dismissal of this case under these circumstances will do nothing to promote the purposes of the PLRA's exhaustion requirement since it would have no effect on the quality of Plaintiff's claim nor would the number of lawsuits be reduced, since Plaintiff can just re-file his action, bringing the same

5

exhausted claims already before this Court.

Lastly, the Magistrate Judge was correct in holding that Plaintiff's amended complaint "supercedes all previous complaints and controls [the] case from that point forward." *Parry v. Mohawk Motors of Mich., Inc*. 236 F. 3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines, Inc*., 209 F. 3d 1064, 1067 (8th Cir. 2000); *Massey v. Helman*, 196 F. 3d 727, 735 (7th Cir. 1999)).

The Court also agrees with the Magistrate Judge's recommendation to grant Defendant Martin's Motion for Summary Judgment as to Plaintiff's claims against him in his individual capacity, but to deny it as it relates to Plaintiff's claims against him in his official capacity. Plaintiff objects to the Magistrate Judge's recommendation to dismiss Plaintiff's claims against Defendant Martin in his individual capacity. Plaintiff alleges that his First Amendment right to the free exercise of religion has been violated due to the MDOC's Policy Directive 05.03.150, which prohibited members of the Nation of Islam from possessing prayer rugs and religious pendants, items necessary for the practice of Plaintiff's religion.[4]

Plaintiff has failed to establish Defendant Martin's personal involvement with the alleged constitutional deprivation. "[L]iability of supervisory personnel must be based on more than the right to control employees[,] . . .[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Bellamy v. Bradley*, 729 F. 2d 416, 421 (6th Cir. 1984).

---

[4] When this lawsuit was originally filed, PD 05.03.150 prohibited members of the Nation of Islam from possessing prayer rugs and pendants. The MDOC has since revised its policy, and effective May 24, 2004, members of the Nation of Islam are now allowed to possess these items. However, Plaintiff contends that the MDOC has failed to enforce its new policy and that he, along with other members of his religion, are still not allowed to practice their religion freely. Prison staff routinely prohibit prisoners from wearing the pendants they are now allowed to possess under the policy. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Exhibit 3, pg. 3.

Plaintiff's claim arises solely from Defendant Martin's former position as the Director of the MDOC.[5] Defendant Martin was responsible for the overall administration of the MDOC and he was responsible for implementing PD 05.03.150. Plaintiff asserts that by signing PD 05.03.150, Defendant Martin "[i]mplicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of . . . " his subordinate, Defendant Burnett, the Correctional Facilities Administration (CFA) Special Activities Coordinator, who was responsible for determining the religious items each religious group could possess. *Id*. Plaintiff's reliance on *Hill v. Marshall*, 962 F. 2d 1209 (6th Cir. 1992), is distinguishable from the facts of this case. In *Hill*, the Supervisor was held liable because he failed to perform "the specific duties of his position[,] . . .reviewing and responding to inmates' complaints abut medical needs." *Hill*, 962 F. 2d 1213. The defendant's failure to perform his job specific responsibilities, coupled with his "[a]ctual knowledge of a breakdown in the proper workings of the department" was sufficient to find liability. *Id.* Plaintiff has not demonstrated that Defendant Martin in fact knew that his subordinate was violating Plaintiff's right to the free exercise of his religion. Additionally, Defendant Martin was responsible for the operation of the entire Michigan Department of Corrections, and he was authorized to "appoint special assistants to oversee specialized areas within the Department."[6] While it is arguable that Defendant Martin had a duty to ensure that prisoners' religious freedoms were respected, Plaintiff has failed to demonstrate that Defendant Martin had actual knowledge that the MDOC policy 05.03.150 was infringing on Plaintiff's First Amendment rights. Since Defendant Martin had no actual knowledge of the constitutional violation, he could not have "[a]bandoned the specific duties of his position . . ." to ensure that Plaintiff's right to the free exercise of his religion was not

---

[5] Defendant Martin has since retired from the MDOC.

[6] PD 01.01.101, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Exhibit 21, pg 1.

infringed upon. *Id.*

Defendant objects to the Magistrate Judge's conclusion that Plaintiff's First Amendment claim is not moot due to the MDOC's revision of PD 05.03.150. Defendants assert that the Magistrate Judge erroneously relied on the fact that the MDOC voluntarily revised its policy, and that this revision was possibly made in anticipation of litigation, to find that Plaintiff's First Amendment claim "is capable of repetition yet evading review." *Roe v. Wade*, 410 U.S. 113, 125, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972); *Moore v. Ogilvie*, 394 U.S. 814, 89 S. Ct. 1493, 23 L. Ed. 2d 1 (1969). In support of this objection, Defendant provided the affidavit of Patricia Caruso, who replaced Defendant Martin as Director of the MDOC on July 1, 2003. (Defendants' Objections to the Report and Recommendation, Exhibit 1). Ms. Caruso states that the policy change was not a result of this litigation and that there is no plan to change the policy. However, these statements alone are insufficient to render Plaintiff's First Amendment claim moot. Defendants have failed to address why the policy was changed in 1998 to prohibit the use of prayer rugs and pendants by Nation of Islam religious members, while members of other Islamic faiths were permitted to possess these items. Defendants have not explained why this policy has changed twice in less than ten years; prior to 1998, the items in controversy were permitted under PD 05.03.150, and until the 2004 revision of the policy, the items were prohibited. While the Department may have no current intention to change its policy, it is not a "remote theoretical possibility" that it might do so in the future as Defendants contend in their Objections. Lastly, the Court agrees that pursuant to pursuant to Fed. R. Civ. P. 25(d)(1), Patricia Caruso should be substituted, in her official capacity, for Defendant Martin as the 'public officer' responsible for implementation of PD 05.03.150.

The Court further agrees with the Magistrate Judge that Defendant Zamaira's Motion for Summary Judgment should be denied. Plaintiff alleges that Defendant Zamaira, as the MDOC Transfer Classification Analyst, violated his Fourteenth Amendment rights by approving departure from Plaintiff's earned security classification, from Level II to Level V, based upon Plaintiff's membership in the Nation of Islam. Defendant Zamaira repeatedly denied Plaintiff's requests to be transferred to a prison matching his earned security classification level Additionally, Plaintiff was told that Defendant Zamaira did not want to transfer him due to Plaintiff's membership in the Nation of Islam.  (Plaintiff's Affidavit, Plaintiff's Brief in Opposition to Defendants' March 23, 2005 Motion for Summary Judgment).

In order to state an Equal Protection violation based upon selectively enforcing a higher security classification, Plaintiff must establish that 1) defendant singled a person belonging to an identifiable group , such as a particular religion; 2) that the defendant initiated the classification with a discriminatory purpose; and 3) the classification must have a discriminatory effect on the group to which plaintiff belongs.  *U.S. v. Anderson*, 923 F. 2d 450, 453 (6th Cir. 1991).  Defendant Zamaira bases his objection on alleged statistical errors cited by the Magistrate Judge to demonstrate that Defendant's classification practices may discriminate against Nation of Islam members.  However, Defendant mischaracterizes the statistics cited by the Magistrate Judge, stating that "it is only the number of departures to higher SL's that is important in evaluating statistical evidence." This is exactly what the Magistrate Judge evaluated when she concluded that 24% of the Nation of Islam prisoners held at Security Classification IV or V, have earned a Level I or II security classification.

Furthermore, Defendant fails to address the fact that Plaintiff presented ample examples of instances where prisoners of different faiths have received lower security classification levels over

9

time, while Plaintiff has remained at a Level V for over ten years. (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, pgs. 4-5, Exhibits 9-14). The examples cited by Plaintiff also indicate that these prisoners who gradually received lower security classification levels had less than stellar institutional records, receiving misconducts for escape, attempted escape and assault. Defendant Zamaira based his departure from Plaintiff's earned security classification upon Plaintiff's institutional record, however Plaintiff has only received six misconducts in ten years and none have been for assault or escape.  (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, pg. 4).  In its March 24, 2003 Order, this Court held that Plaintiff has stated a question of fact regarding whether Defendant Zamaira's classification of Plaintiff at Security Level V had a discriminatory purpose. (March 24, 2003 Order). Plaintiff asserts that he was informed by another prison official that Defendant Zamaira denied his transfer to a lower security prison because he was a Nation of Islam member. Plaintiff has provided sufficient evidence to create a genuine issue of material fact on the issue of whether Defendant Zamaira singled Plaintiff out as a member of the Nation of Islam, that similarly situated individuals outside Plaintiff's religion are not subject to the same disparate treatment, and that the classification was initiated with a discriminatory purpose and has a discriminatory effect on Nation of Islam prisoners. *See U.S. v. Anderson*, 923 F. 2d 450, 453 (6th Cir. 1991); *Gardenhire v. Schubert*, 205 F. 3d 303, s19 (6th Cir. 2000).

The Court disagrees with the Magistrate Judge's recommendation to grant Defendant Burnett's Motion for Summary Judgment. Plaintiff objects to the Magistrate Judge's finding that Defendant Burnett was not engaged in any specific, personal wrongdoing. As the MDOC's Special Activities Coordinator, as well as his membership in the Chaplain Advisory Committee, Defendant was responsible for evaluating religious programming and making evaluations to the MDOC's

deputy directors regarding what religious items prisoners should be allowed to possess in order to practice their designated religion. Defendant Burnett was responsible for, and did make the decisions regarding what religious items prisoners should be allowed to possess. Defendant Burnett stated that "I provided much of the information for PD 05.03.150 . . ." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Affidavit of Dave Burnett, Exhibit 8).  Also, in response to Plaintiff's repeated requests for prayer rugs and pendants, Burnett replied that "prayer rugs for members of the Nation of Islam are not being approved at this time." (Plaintiff's Brief in Opposition, Exhibit 5).  Defendant Burnett ignored the Nation of Islam literature provided to him by Plaintiff, which suggested that prayer rugs and pendants were necessary to the practice of Plaintiff's religion. Plaintiff has provided sufficient evidence to demonstrate Defendant Burnett's personal involvement in implementing PD 05.03.150, which infringed upon Plaintiff's right to the free exercise of his religion.

Lastly, Defendants' assert that pursuant to 42 U.S. §1997e(e), Plaintiff is precluded from recovery of monetary damages because he failed to demonstrate that he has suffered a physical injury.  42 U.S.C. §1997e(e) states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Magistrate Judge did not address this issue in her Report and Recommendation.

Although the Sixth Circuit has not spoken to this issue in a published opinion, its decision in *Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459, at *2 (C.A.6 Mich. Sept. 18, 2000) illustrates its position on this matter.  The Court held that the plaintiff's First Amendment claim was not precluded from money damages.  *Id.*  In so holding, the Court relied on the Ninth Circuit's

11

decision in *Cannell v. Lightner*, 143 F. 3d 1210, 1213 (9th Cir. 1998*).* The *Cannell* Court rejected the same argument Defendants assert here, that Plaintiff is barred from receiving monetary damages on his First Amendment claim,[7] holding that the plaintiff "[i]s not asserting a claim for "mental or emotional injury." He is asserting a claim for a violation of his First Amendment rights. The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, §1997e(e) does not apply to First Amendment claims regardless of the form of relief sought.*" Id.* This Court agrees with the Ninth Circuit.

The Supreme Court has held that compensation under §1983 is to be governed by "principles derived from the common law of torts." *Memphis Community School Dist.* v. *Stachura*, 477 U.S. 299, 308, 91 L. Ed. 2d 249, 106 S. Ct. 2537 (1986). Presumed damages may be appropriate when "a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish." *Id.* at 310-311. "The plain language of the statute does not require dismissal of constitutional claims in which no physical injury is present, since nominal and punitive damages may be recovered in cases, such as this where First Amendment violations are alleged." *Meade v. Plummer*, 344 F. Supp. 2d 569 ( E.D. Mich. 2004) (citing *Stachura*, 477 U.S. at 308).

Accordingly,

IT IS ORDERED that the Report and Recommendation of Magistrate Mona K. Majzoub [**Docket No. 227, filed October 11, 2005**] is ACCEPTED and REJECTED in part.

---

[7] In Defendants' March 23, 2005 Motion for Summary Judgment, Defendants asserted that §1997e(e) barred Plaintiff's request for monetary relief on his First Amendment claim. In Defendants' Objections to the Magistrate Judge's Report and Recommendation, they now argue that §1997e(e) bars monetary relief on Plaintiff's Fourteenth Amendment claim as well. Since Defendants did not raise this argument as it related to Plaintiff's Fourteenth Amendment claim in their original motion, they can not do so now.

IT IS FURTHER ORDERED that Defendant Martin's, Burnett's and Zamaira's Rule 56(b) Motion for Summary Judgment [**Docket No. 219, filed May 20, 2005**] is DENIED.

IT IS FURTHER ORDERED that Defendants' (Bill Martin, Dave Burnett, and Charles Zamaira) Motion to Dismiss and/or for Summary Judgment [**Docket No. 205, filed March 23, 2005**] is GRANTED in part, and DENIED in part. In reference to Plaintiff's claims as to Defendant Bill Martin, the Motion is GRANTED. In reference to Plaintiff's claims as to Defendants Burnett and Zamaira, the Motion is DENIED.

IT IS FURTHER ORDERED that Plaintiff's First Amendment claim against Defendant Martin, in his individual capacity, is DISMISSED.

IT IS FURTHER ORDERED that Patricia Caruso, in her official capacity, is substituted for Defendant Bill Martin.

IT IS FURTHER ORDERED that Defendants' Motion to Enlarge Time to File Objections to the Report and Recommendation of October 11, 2005 [**Docket No. 229, filed October 28, 2005**] is GRANTED.

IT IS FURTHER ORDERED that this matter is REFERRED back to the Magistrate Jusge for a hearing and determination on all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), including directing and assisting the parties in the preparation of a proposed Joint Final Pretrial Order pursuant to E.D. Mich. L.R. 26.2. A final pretrial conference date and a trial date will thereafter be scheduled by the undersigned after being informed that the parties have submitted the proposed Joint Final Pretrial Order. No further dispositive motions shall be filed without leave of

court.

                                              s/ DENISE PAGE HOOD

DATED: February 9, 2006               DENISE PAGE HOOD
                                              United States District Judge


      I hereby certify that a copy of the foregoing document was served upon counsel of record on February 9, 2006, by electronic and/or ordinary mail.

                                              s/William F. Lewis

                                              Case Manager